# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

WAYNE ANTHONY STEWART,

    Plaintiff,

v.

JOE NORWOOD ET AL.,

    Defendants.

Case No. 16-3189-JAR

## MEMORANDUM AND ORDER

Plaintiff Wayne Stewart, proceeding *pro se*, brings this action against Joe Norwood, James Heimgartner, Deane Donley, and the Kansas Department of Corrections pursuant to 42 U.S.C. § 1983 and 38 U.S.C. § 5301 alleging violation of his constitutional due process rights relating to deprivation of his ability to spend his veteran's benefits while incarcerated at the El Dorado Correctional Facility. This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order And Preliminary Injunction (Doc. 22). Plaintiff is seeking an injunction ordering Defendants to freeze disbursement of his veteran's benefits, except for the application of claims by the United States, and require that his monetary spending while imprisoned come from his prisoner monthly incentive pay. Defendants responded to the motion (Doc. 23), but Plaintiff failed to file a reply and the time to do so has passed.[1] Therefore, the Court is prepared to rule. For the reason described more fully below, the Court denies the motion for temporary restraining order or in the alternative, preliminary injunction.

---

[1] The reply deadline was April 5, 2017. *See* D. Kan. Rule 6.1(d)(1) (requiring replies to be filed and served within 14 days of the service of the response).

1

**I.    Factual and Procedural Background**

The following relevant facts are taken from the Martinez Report filed in this matter.[2] Plaintiff was issued veteran's affairs benefits into his inmate account. In February 2016, Plaintiff made a request to send those veteran's affairs benefits in the amount of $7300 to Joyce Jefferson, who he alleged was his sister, because it was not making interest in his inmate account. This grievance was reviewed by Unit Team Leader Daniel Jackson, and it was subsequently denied. Plaintiff's request was denied pursuant to a Kansas Department of Corrections policy that limits inmate spending to $40 per month unless the warden approves an exception. There was no exception made for Plaintiff's request because he did not provide "an applicable enough reason for an exception to be approved."[3] Plaintiff appealed that decision, but James Heimgartner, the Warden, and Douglas Burris, the Secretary of Corrections, affirmed Jackson's decision.

Again in March 2016, Plaintiff made a request to send his veteran's affairs benefits in the amount of $7300 to Jefferson and $2500 to his daughter, Rosalind Reeves, for her mother's funeral expenses. Within the grievance, he also objected to his veteran's affairs benefits being cashed without his approval into his non-interest bearing inmate account. This grievance was reviewed by Jackson, and it was subsequently denied by Deputy Warden Deane Donley. There was no exception made for Plaintiff's request because he did not provide "an applicable enough reason for an exception to be approved."[4] Along with the reasoning for denial of the grievance, a memorandum from Centralized Inmate Banking explained that there was no interest on money placed into the inmate account because the bank fees exceeded the interest rate.

---

[2] Doc. 10.
[3] Doc. 10-7 at 3.
[4] Doc. 10-8 at 7.

On October 6, 2016, Plaintiff filed the Complaint in this matter alleging generally that Defendants, through prison policy and procedures, are requiring him to spend his veteran's benefits through his prison account while he is imprisoned at the El Dorado Correctional Facility.[5] Instead of spending his veteran's benefits while in prison, he requests that he be allowed to spend his veteran's benefits outside of the prison on purchasing a home, creating an interest bearing account, and sending the funds to family members for a burial. On January 10, 2017, Defendants moved to dismiss Plaintiff's Complaint on the basis of Eleventh Amendment immunity, qualified immunity, and failure to state a claim.[6] After the motion to dismiss was fully briefed including a surreply, Plaintiff filed the instant motion for preliminary injunction on March 8, 2017.[7] Liberally construing Plaintiff's motion for preliminary injunction, Plaintiff is seeking an order to enjoin Defendants from depleting his veteran's benefits for prison spending and instead withdraw the money from his prison monthly incentive package.

## II. Legal Standard

Plaintiff requests both a temporary restraining order and/or a preliminary injunction within his filing. A temporary restraining order may be issued without notice to the adverse party if (1) specific facts are submitted in an affidavit or verified complaint alleging immediate and irreparable injury to the movant in allowing the adverse party to respond and (2) the movant's attorney certifies in writing effort made to give notice and why notice should be waived.[8] Plaintiff does not meet this standard, so the Court construes this motion as an application for preliminary injunction.

---

[5] Plaintiff initially filed this matter on September 6, 2016. Doc. 1. Plaintiff filed the Complaint considered herein on October 6, 2016 following the Court issuing a notice of deficiency. Doc. 3.

[6] *See* Docs. 14, 15.

[7] Doc. 22.

[8] Fed. R. Civ. P. 65(b)(1).

Plaintiff's burden, necessary to obtain a preliminary injunction, is well settled. Plaintiff must show the following:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.[9]

In addition, "the right to relief must be clear and unequivocal" because "a preliminary injunction is an extraordinary remedy."[10] Certain types of preliminary injunctions are disfavored. In particular, the Tenth Circuit has identified three types of disfavored preliminary injunctions and concluded that the movant must make a heightened showing to demonstrate entitlement to preliminary relief: "(1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits."[11] Specifically, where, as here, the movant seeks to disturb the status quo, he has to demonstrate "on balance, the four [preliminary injunction] factors weigh heavily and compellingly" in his favor."[12] When a preliminary injunction is a disfavored one, the movant cannot rely on the Tenth Circuit's "modified-likelihood-of-success-on-the-merits standard" and, instead, "must make a strong showing both with regard to the likelihood of success on the merits and with regards to the balance of the harms."[13]

---

[9] *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

[10] *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

[11] *O Cento Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F. 3d 973, 977 (10th Cir. 2004) (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1097, 1098 (10th Cir. 1991)); *see also Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012).

[12] *O Cento Espirita*, 389 F.3d at 977.

[13] *Id.* at 976.

Because Plaintiff proceeds *pro se*, the Court construes his pleadings liberally.[14] However, the Court does not assume the role of his advocate.[15] Also, Plaintiff's *pro se* status does not excuse him from "the burden of alleging sufficient facts on which a recognized legal claim could be based."[16] Plaintiff is not relieved from complying with the rules of the court or facing the consequences of noncompliance.[17]

### III. Discussion

Because the first factor above—a substantial likelihood of success on the merits—resolves whether preliminary injunction is warranted, the Court limits its discussion to this factor.[18] Plaintiff requests that his "VA benefit account be frozen" and "for all monetary requests . . . and monthly requests for out going funds, not [to] transact against [his] VA benefits, but request[s] be addressed from the monthly incentive pay."[19] The only irreparable injury he alludes to in the motion is that his "VA benefit funds account will continue to be depleted" if Defendants are not enjoined. He asserts that the prison's refusal to freeze his veteran's benefits is illegal and in violation of 38 U.S.C. § 5301.

Section 5301 was created to "protect veteran's benefits against their creditors so that the veteran's themselves could spend the funds as they saw fit."[20] Section 5301(a) (1), U.S.C., Title 38, provides in pertinent part:

---

[14] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[15] *Id.*

[16] *Id.*

[17] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[18] *Cf. Rep. Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (considering only the first factor of the preliminary injunction test).

[19] Doc. 22 at 2.

[20] *Nelson v. Heiss*, 271 F.3d 891, 894 (9th Cir. 2001).

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

The Court is not aware of nor do the parties cite Tenth Circuit case law recognizing a claim under 42 U.S.C. §1983 for alleged violation of 38 U.S.C. § 5301(a). However, the Ninth Circuit in *Nelson v. Heiss*[21] held that a prisoner could state a § 1983 claim for an alleged violation of 38 U.S.C. § 5301(a). Particularly, the prison allowed the prisoner to be provided the goods and services requested, but it placed a hold on the prisoner's deficient account so that it could be repaid from the veteran's benefits when they arrived.[22] The Ninth Circuit held that funds in an inmate account that came from the payment of veteran's benefits could not be used by the prison to reimburse itself for the goods and services provided.[23]

Assuming that the Tenth Circuit adopts a similar position that §1983 allows for cognizable claims for §5301(a) violations, Plaintiff still has not stated a claim upon which relief may be granted. The preliminary injunction sought herein does not involve withholding Plaintiff's veteran's benefits. In fact, Plaintiff is allowed to spend the veteran benefits within the prison. Plaintiff is purchasing goods and services from the prison, and the purchase is being directly withdrawn from his account with no need for placement of a hold on his account. The prison is not acting as a creditor. When Plaintiff spends his veteran's benefits, it is not to reimburse the prison, rather he is spending them at the canteen for goods and services on his own accord. Defendants are not attaching, levying, or seizing Plaintiff's veteran's benefits in violation of the statute, so there is no cognizable claim.

---

[21] *Id.*

[22] *Id.* at 893.

[23] *Id.* at 896.

Further, the Court finds that the policy that requires spending first from the veteran's benefits money and then from the monthly incentive package does not violate due process. In *Sandin v. Conner*, the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[24] "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."[25]

The Kansas Department of Corrections explained that it is acting as a fiduciary for the inmate while in custody, so it is obligated to deposit funds received and manage the funds. Both the veteran's benefits and the monthly incentive package money are held in the same inmate account, so it cannot be plausibly argued that Plaintiff is facing an "atypical and significant hardship" when he spends his veteran's benefits. When Plaintiff choses to spend these funds, it is discretionary in nature. Further, there is essentially no difference in whether the withdraw is coming from the veteran's benefits or the monthly incentive package as these funds are commingled. Substantial deference is given to the professional judgment of the prison official Defendants because they have "significant responsibility for defining the legitimate goals of [the prison] and for determining the most appropriate means to accomplish them."[26] Plaintiff has not met his burden to challenge the policy of spending his veteran's benefits before his monthly

---

[24] *Sandin v. Conner*, 515 U.S. 472 (1995).

[25] *Id.* at 485.

[26] *Steffey v. Orman*, 461 F.3d 1218, 1222 (10th Cir. 2006) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

incentive pay as creating a significant and atypical deprivation of his rights thereby affording him relief.[27]

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 22) is **denied**.

**IT IS SO ORDERED.**

Dated: May 26, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[27] *Overton*, 539 U.S. at 132 (holding that the burden is not on the state to prove the validity of the prison regulation, but on the prisoner to disprove it).