# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WAYNE ANTHONY STEWART,

     Plaintiff,

     v.

                        Case No. 16-3189-JAR-DJW

JOE NORWOOD, ET AL.,

     Defendants.

## MEMORANDUM AND ORDER

*Pro se* Plaintiff Wayne Anthony Stewart, an inmate at the El Dorado Correctional

Facility ("EDCF") in El Dorado, Kansas, filed this lawsuit seeking declaratory relief, injunctive

relief, and compensatory and punitive damages against Defendants Joe Norwood, James

Heimgartner, and Deane Donley. Defendant Norwood is the Kansas Secretary of Corrections,

Defendant Heimgartner is the Warden at EDCF, and Defendant Donley is the Deputy Warden at

that facility. Plaintiff's Complaint seeks relief under 42 U.S.C. § 1983 for violation of his

statutory and constitutional rights relating to restrictions placed upon his use of Veteran's

Administration disability benefits ("VA benefits") while he is imprisoned and EDCF's failure to

pay interest on his inmate trust account. This matter is currently before the Court on Defendants'

Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 14).

Defendants' motion is fully briefed, and the Court is prepared to rule. For the reasons explained

below, Defendants' Motion to Dismiss is granted in part and denied in part.

## I.     Legal Standard

To the extent that Plaintiff asserts claims against Defendants in their official capacity,

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction,

arguing that they are immune from such claims under the Eleventh Amendment. "'Federal

courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"[1]  Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.[2] "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[3]  The burden of establishing a federal court's subject matter jurisdiction falls upon the party asserting jurisdiction.[4]  A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack.[5]  A "facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint."[6]  When the attack on subject matter jurisdiction is facial, as in this case, "a district court must accept the allegations in the complaint as true."[7]  "[O]nce effectively asserted[,] [Eleventh Amendment immunity] constitutes a bar to the exercise of federal subject matter jurisdiction."[8]

Defendants also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of qualified immunity for claims against Defendants in their individual capacity, asserting that Plaintiff has failed to state a claim upon which relief can be granted.  To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that,

---

[1] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-37 (1992); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

[2] 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity of citizenship).

[3] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citing *Bradbury v. Dennis*, 310 F.2d 73 (10th Cir. 1962), cert. denied, 372 U.S. 928 (1963)).

[4] *Id.* (citing *Becker v. Angle*, 165 F.2d 140 (10th Cir. 1947)).

[5] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[6] *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

[7] *Id.*; *see also Gosselin v. Kaufman*, 656 F. App'x 916, 918 (10th Cir. 2016).

[8] *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (original emphasis omitted).

assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face."[9]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[10]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[11]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[12]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[13]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[14]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[15]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[16]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[10] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[13] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[14] *Id.*

[15] *Id.* at 678–679.

[16] *Id.* at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

Because Plaintiff proceeds *pro se*, the court must construe his filings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys.[18] This liberal standard requires the court to construe a *pro se* plaintiff's pleadings as stating a valid claim if a reasonable reading of them allows the court to do so "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[19] However, the court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."[20] The requirement that the court must read a *pro se* plaintiff's pleadings broadly "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based,"[21] nor does a plaintiff's *pro se* status excuse him from complying with federal and local rules.[22]

## II.    Factual Background

The following relevant and undisputed facts are taken from Plaintiff's Complaint,[23] the "Report of *Arron v. Martinez* [sic] Investigation"[24] filed in this matter by interested party Kansas Department of Corrections ("KDOC"), and from Plaintiff's Response to the *Martinez* Report.[25]

---

[17] *Id.* at 678.

[18] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

[19] *Id.*

[20] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall*, 935 F.2d at 1110)).

[21] *Hall*, 935 F.2d at 1110.

[22] *Barnes v. U.S.*, 173 F. App'x 695, 697–98 (10th Cir. 2006) (citing *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994); *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

[23] Plaintiff's initial Complaint (Doc. 1), filed on September 6, 2016, was deficient under D.Kan. Rule 9.1(a)(3) because it was not on the court-approved form for civil rights complaints by prisoners under 42 U.S.C. §

Plaintiff is an inmate housed at EDCF, where he has been incarcerated since November 10, 2011.[26] Plaintiff began receiving VA benefits due to his prior military service in November 2015.[27] These benefits are issued by the United States Department of Treasury and deposited directly into Plaintiff's inmate account pursuant to K.S.A. § 76-173 and KDOC Internal Management Policy and Procedure ("IMPP") 04-103D.[28] However, federal law provides that because Plaintiff has been convicted of a felony offense, the VA benefits he may receive during his incarceration are significantly reduced.[29] Plaintiff's monthly benefits are typically around $130, but in early November 2015, the Department of Treasury issued to Plaintiff a lump-sum

---

1983. The Clerk's Office therefore ordered Plaintiff to refile his complaint on the court-approved form, which he did on October 6, 2016 (Doc. 3). The content and allegations of Plaintiff's initial Complaint are more detailed than in his subsequent Complaint. Therefore, the Court will consider both Complaints in ruling upon Defendants' Motion to Dismiss and will refer to them collectively as "Plaintiff's Complaint" with reference to the separate documents as needed.

[24] Docs. 10, 11.

[25] Doc. 13. A "*Martinez* report" is a vehicle, developed through Tenth Circuit case law, for ensuring a factually sufficient record in cases involving *pro se* prisoner plaintiffs. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). A *Martinez* report "is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall*, 935 F.2d at 1109. Generally, when a court considers materials outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the motion is treated as one for summary judgment and the plaintiff must be given notice and an opportunity to respond as required by Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56. In this case, however, Plaintiff has submitted a response concerning those portions of the *Martinez* report that he disputes, and the Court now considers only those factual recitations set forth in the *Martinez* report that are corroborated or undisputed by Plaintiff. The Tenth Circuit has held that where the court refers "only to those portions of the *Martinez* report that describe the challenged policy and the reasons for it . . . [and does] not use the report to resolve factual issues or to find that there are no disputed facts," the *Martinez* report may properly be considered part of the pleadings for the purposes of a motion to dismiss. *Hall*, 935 F.2d at 112–13. As in *Hall*, Plaintiff here does not challenge the existence or content of the applicable KDOC policies and procedures set forth in the *Martinez* report, but instead contends that these policies and procedures violate his federal statutory and constitutional rights.

[26] Doc. 10-1.

[27] Doc. 13 at 5.

[28] Doc. 10-5 at 2.

[29] 38 U.S.C. § 5313 (providing for a reduction in the rate of disability compensation to persons "incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony . . ."); Doc. 13-1 at 2 ("We are withholding benefits due to your incarceration. We are unable to verify the exact dates that you began your incarceration so we are paying you the 10% rate from the time we granted compensation. . . .").

payment of $8,680.98.[30]  This check was deposited in Plaintiff's inmate trust account on November 6, 2015.[31]

IMPP 11-101 provides that, with certain limited exceptions, inmates are subject to a $40 per pay period restriction on outgoing funds.[32]  Further, IMPP 04-103D provides that "[a]n offender may be required to submit evidence that the entity identified to receive funds per the withdrawal request is a legitimate entity and that the funds will be used for the designated purpose. . . ."[33]  However, under IMPP 04-106A, "[n]o offender funds shall be subjected to collection for fines, fees or payments if those funds were accrued from any of the following sources: (1) Social security benefits, (2) Veterans' Administration benefits; or (3) Worker's compensation benefits paid to the inmate garnishee."[34]

In February 2016, Plaintiff made a request to send $7,300 from his VA benefits to Joyce Jefferson, whom he stated was his sister, so that Ms. Jefferson could purchase a house and deposit Plaintiff's benefits in an interest-bearing account of his choosing.[35]  That request was denied and, on February 11, 2016, Plaintiff submitted a grievance to his Unit Team Manager, Daniel A. Jackson.[36]  Mr. Jackson denied Plaintiff's request to send $7,300 to Ms. Jefferson on the basis that offenders are only permitted to send $40 outside the prison per month pursuant to EDCF's policies and procedures, absent an exception approved by the warden.[37]  Mr. Jackson stated that Plaintiff had not provided "an applicable enough reason for an exception to be

---

[30] Doc. 11-1 at 1–2.

[31] *Id.*

[32] Doc. 10-6 at 9.

[33] Doc. 10-5 at 4.

[34] Doc. 11-5 at 3.

[35] Doc. 3 at 4; Doc. 10-7 at 2.

[36] Doc. 3-1 at 4.

[37] Doc. 10-7 at 3.

approved by the deputy Warden of programs."[38]  On February 17, 2016, Plaintiff sought the warden's review of his grievance and Mr. Jackson's response, which Defendant Heimgartner considered on February 23, 2016.[39]  Defendant Heimgartner found that no further action was necessary.[40]  Plaintiff appealed Defendant Heimgartner's decision to the Office of Defendant Norwood, the Secretary of Corrections, on February 24, 2016.[41]  Douglas W. Burris, acting as designee for Defendant Norwood, found no further action necessary because "the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong."[42]

On March 15, 2016, Plaintiff submitted a second grievance to Unit Team Manager Jackson relating to his VA benefits.[43]  In that grievance, Plaintiff reiterated his complaint about being unable to send $7,300 from his benefits to Ms. Jefferson and, in a similar vein, stated that he had been forbidden from sending $2,500 to his daughter (or directly to a funeral home) to assist with the burial of his daughter's mother.[44]  Plaintiff further objected to EDCF cashing his VA benefits checks into his institutional inmate account without his permission, failing to provide him timely notice of the issuance of benefits, failing to properly prorate and credit interest earned to his account and, generally, restricting him from directing the investment and use of the benefits as he saw fit.[45]  Plaintiff's March 15, 2016 grievance references the Takings

---

[38] *Id.*

[39] Doc. 10-7 at 1.

[40] *Id.*

[41] Doc. 10-7 at 6.

[42] Doc. 10-7 at 5.

[43] Doc. 10-8 at 4–6.

[44] Doc. 10-8 at 5.

[45] Doc. 10-8 at 5–6.

Clause of the Fifth Amendment to the United States Constitution, as well as 38 U.S.C. § 5301(a)(1), which forbids the attachment, levy, seizure, or taxation of VA benefits.[46]

On March 16, 2016, Mr. Jackson found no need for further action on Plaintiff's second grievance. Mr. Jackson stated that once VA benefits are deposited in Plaintiff's inmate account,

> [Y]ou must utilize [the money] in accordance KDOC policies, which clearly state that offenders can only send out $40.00 per month unless they are a private industry worker or an exception has been made by the deputy warden of programs. . . . [Y]ou did not provide an applicable enough reason for an exception to be approved by the deputy Warden of programs so you are not allowed to send this out in one lump sum. All monies that are sent directly to an offender in the custody of the department of corrections shall be processed by centralized banking.[47]

Mr. Jackson also attached a memo from EDCF Centralized Inmate Banking explaining that interest is regularly allocated to inmate accounts "consistent with applicable State law and Department of Administration policy and procedure."[48] The memo further states that due to the continuing economic downturn, there may be no interest distribution appearing on inmate accounts for months during which fees for the maintenance of those accounts exceed interest earned.[49] In fact, no interest has been paid on EDCF inmate funds since 2012 per the affidavit of Jack Cauble, Business Administrator for the Kansas Department of Corrections, which states that "bank fees to manage the accounts have cost the Department of Corrections more than any interest that has been paid."[50]

Plaintiff once again sought warden review of Mr. Jackson's decision on Plaintiff's grievance. Both Defendant Donley and Defendant Heimgartner found that no further action was

---

[46] *Id.*

[47] Doc. 10-8 at 7.

[48] Doc. 10-8 at 8.

[49] Doc. 10-8 at 8.

[50] Doc. 10-4 at 1.

necessary,[51] and Plaintiff appealed to the Secretary of Corrections.[52]  On April 19, 2016, Defendant Norwood's office likewise found no need for further action on Plaintiff's second grievance on the ground that Plaintiff had offered no evidence or argument suggesting that EDCF's response was wrong.[53]

On October 6, 2016, Plaintiff filed his Complaint in this matter invoking 42 U.S.C § 1983 and alleging that Defendants violated his statutory and constitutional rights by implementing and enforcing policies that prevent Plaintiff from (1) sending his VA benefits to persons outside EDCF while he is incarcerated, (2) placing his benefits in an outside interest-bearing account of his own choosing, and (3) collecting appropriate interest on the VA benefits held in his inmate account.[54]  Although Plaintiff's Complaint specifically alleges that Defendants have violated 38 U.S.C. § 5301(a)(1) and the Takings Clause of the Fifth Amendment,[55] his briefing in this case also includes due process and Supremacy Clause arguments.  Defendants filed a motion to dismiss on January 10, 2017, raising the defenses of complete and qualified immunity to Plaintiff's claims.

While Defendants' motion to dismiss was pending, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction.[56]  In that motion, Plaintiff sought an order requiring Defendants to freeze all disbursements from the VA benefits held in his inmate trust account (except for any disbursements made to satisfy claims by the United States Government), and to debit only his monthly prisoner incentive pay for any purchases Plaintiff

---

[51] Doc. 10 at 3; Doc. 10-8 at 3.

[52] Doc. 10-8 at 2.

[53] Doc. 10-8 at 1.

[54] Doc. 3 at 2, 4.

[55] Doc. 1 at 3–6.

[56] Doc. 22.

makes while imprisoned.  The Court denied Plaintiff's motion on May 26, 2017, finding that Plaintiff had not met his burden to show that EDCF's policy permitting the depletion of Plaintiff's VA benefits due to his own discretionary spending amounted to an atypical deprivation of Plaintiff's rights entitling him to relief.[57]  The Court now turns to Defendants' pending motion to dismiss.

## III.    Analysis

### A.    Eleventh Amendment Immunity

Although Plaintiff's initial Complaint expressly states that Defendants are being sued in their individual capacity, his second Complaint omits this allegation other than in the case caption.  Defendants therefore assume, in an abundance of caution, that Plaintiff is also asserting official-capacity claims.[58]  Given that Plaintiff alleges that "the Kansas Secretary of Corrections is liable for creating rules, policies, or customs that violate[] . . . plaintiff's rights,"[59] the Court will also liberally construe Plaintiff's Complaint as asserting claims against Defendant Norwood, the Kansas Secretary of Corrections, in his official capacity.[60]  Defendants argue that because sovereign immunity shields them from suit in their official capacity, this Court lacks subject matter jurisdiction.  In his opposition briefing, Plaintiff does not address Defendants' Eleventh Amendment argument.

---

[57] Doc. 24 at 5–8.

[58] Doc. 15 at 5 n. 1.

[59] Doc. 1 at 4–5, Doc. 3 at 4.

[60] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law.") (citations omitted); *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) ("In discerning whether a lawsuit is against a defendant personally or in his official capacity, the caption may be informative but clearly is not dispositive. . . . Thus, where the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability.") (internal citations omitted).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[61] The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."[62] "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."[63] "A suit against state officials in their official capacities is considered a claim against the state, and thus likewise barred."[64]

Regarding Plaintiff's claims for compensatory and punitive damages under 42 U.S.C. § 1983, Defendants are correct that such claims are barred by the Eleventh Amendment and must be dismissed for lack of subject matter jurisdiction. As employees of KDOC during the time period in question, Defendants share the State of Kansas's immunity from money damages in suits against them in their official capacities.[65] Moreover, the State, its agencies, and state officials sued in their official capacities are not "persons" for the purposes of 42 U.S.C. § 1983.[66]

---

[61] U.S. Const. amend. XI.

[62] *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted).

[63] *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).

[64] *Gosselin v. Kaufman*, 656 F. App'x 916, 918 (10th Cir. 2016) (citing *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995)).

[65] *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996).

[66] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device. We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.") (citations omitted).

Plaintiff's non-monetary claims require additional analysis. There are three exceptions to the Eleventh Amendment's guarantee of sovereign immunity to states, though only one is potentially applicable here. Under the Supreme Court's ruling in *Ex parte Young*, a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.[67] In his Complaint, Plaintiff seeks "an order declaring that the Defendants have acted in violation of the [United States Code]," as well as "an injunction compelling Defendants to stop the attachment or withholding [of] VA benefits . . . to send out as I see fit."[68] Plaintiff's claim for *retrospective* declaratory relief, rather than *prospective* relief, does not fall within the *Ex parte Young* exception and is therefore barred by the Eleventh Amendment.[69] However, Plaintiff's liberally construed official-capacity claim against Defendant Norwood does fall within the *Ex parte Young* exception because Plaintiff seeks an order enjoining Defendants from the ongoing violation of his federal rights through their refusal to permit him to send his VA benefits outside EDCF during his incarceration and their failure to pay interest on Plaintiff's inmate trust account.[70] Although Plaintiff's official-capacity claim for injunctive relief against Defendant Norwood is not subject to dismissal for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), the

---

[67] *Ex parte Young*, 209 U.S. 123 (1908). In addition to the *Ex parte Young* exception, a state may consent to suit in federal court or Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. *See Levy*, 789 F.3d at 1169 (citing *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012)). Neither of these exceptions applies here.

[68] Doc. 3 at 6. Because Plaintiff is *pro se*, the Court liberally construes Plaintiff's request for injunctive relief to pertain to both restrictions on Plaintiff's use of VA benefits while he is imprisoned and EDCF's withholding of interest earned on those benefits deposited in Plaintiff's inmate trust account. *See* Doc. 3 at 4 (alleging that EDCF is "not paying interest on VA account"); Doc. 1 at 6 (alleging that "[i]interest earned on moneys invested under section KSA 76-175 . . . was not prorated . . . and credited to my VA account on the basis of the amount of money I have in the VA account that KDOC is holding in an inmate trust fund account").

[69] *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("As the district court correctly held, the claims for back pay, monetary damages, and retrospective declaratory relief are barred by the Eleventh Amendment.").

[70] *Id.* ("[T]he Eleventh Amendment does not prohibit a suit in federal court to enjoin prospectively a state official from violating federal law.").

Court must also analyze whether that claim survives Defendants' challenge pursuant to Rule 12(b)(6). For the reasons set forth more fully below, the Court finds that Plaintiff's official-capacity claim against Defendant Norwood survives only to the extent that Plaintiff seeks injunctive relief pertaining to KDOC's withholding of interest earned on Plaintiff's inmate trust account.

### B. Qualified Immunity

Section 1983 provides a cause of action for the deprivation of rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ."[71] Allowing a plaintiff to seek damages in an individual-capacity suit against the offending parties is a vital tool for vindicating cherished constitutional rights.[72] In certain circumstances, however, the individual offending party is entitled to qualified immunity from damages liability under § 1983.[73] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[74] To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows (1) that the official violated a federal statutory or constitutional right and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[75] Generally, for a right to be considered clearly established, "there must be a Supreme Court or Tenth Circuit

---

[71] 42 U.S.C. § 1983.

[72] *Gomez v. Toledo*, 446 U.S. 635, 639 (1980) (citing *Owen v. City of Independence*, 445 U.S. 622, 651 (1980)).

[73] *Id.*

[74] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[75] *Id.* at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000).

decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[76]

Qualified immunity is a defense that must be pleaded by the defendant, but once the defendant raises it, the burden of proof is on the plaintiff.[77] Unless the plaintiff proves both prongs, the official is entitled to qualified immunity.[78] Courts have discretion to decide which of the two prongs of the analysis to address first.[79]

### 1. 38 U.S.C. § 5301(a)(1)

Plaintiff alleges that by creating and enforcing policies that prevent him from using his VA benefits outside the prison as he sees fit, Defendants have violated and continue to violate 38 U.S.C. § 5301(a)(1), which was enacted "to protect veteran's benefits against their creditors so that the veterans themselves could spend the funds as they saw fit . . . ."[80] Section 5301(a)(1) provides, in pertinent part:

> Payments of benefits due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.[81]

To create a right enforceable under § 1983, the federal statute at issue must meet three conditions.

---

[76] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)).

[77] *See Gomez*, 446 U.S. at 640; *Libretti v. Courtney*, 633 F. App'x 698, 699 (10th Cir. 2016).

[78] *See al-Kidd*, 563 U.S. at 735.

[79] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[80] *Nelson v. Heiss*, 271 F.3d 891, 894 (9th Cir. 2001).

[81] 38 U.S.C. § 5301(a)(1).

> First, Congress must have intended that the provision in question
> benefit the plaintiff. Second, the plaintiff must demonstrate that
> the right assertedly protected by the statute is not so "vague and
> amorphous" that its enforcement would strain judicial competence.
> Third, the statute must unambiguously impose a binding regulation
> on the States. In other words, the provision giving rise to the
> asserted right must be couched in mandatory, rather than precatory,
> terms.[82]

As stated in the Court's May 26, 2017 Memorandum and Order denying Plaintiff's motion for a temporary restraining order or preliminary injunction, the parties have not cited and the Court is not aware of Tenth Circuit case law recognizing a claim under § 1983 for an alleged violation of § 5301(a)(1). However, the Ninth Circuit found in *Nelson v. Heiss* that a prisoner could state a § 1983 claim for a violation of § 5301(a)(1) where the prisoner requested goods and services and the prison provided those goods and services subject to a hold on the prisoner's deficient account, so that the amount due would be repaid from the prisoner's VA benefits when they arrived.[83] The Ninth Circuit held that §5301(a)(1) precludes prison officials from placing a hold on future VA benefits to secure payment for goods and services requested by the prisoner.[84] Similarly, in *Higgins v. Beyer*, the Third Circuit held that § 5301(a)(1) "satisfies the conditions set forth in *Blessing v. Freestone* for creating a federal right enforceable under § 1983."[85] The *Higgins* court found that the plaintiff alleged sufficient facts to support a § 1983 claim where prison officials collected a crime victims' assessment from his VA benefits against his will.[86]

Assuming that the Tenth Circuit would adopt a similar position with respect to the cognizability of § 1983 claims for alleged violations of § 5301(a)(1), Plaintiff has still failed to

---

[82] *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997) (citations omitted).

[83] *Nelson,* 271 F.3d at 896.

[84] *Id.*

[85] *Higgins v. Beyer*, 293 F.3d 683, 690 (3d Cir. 2002).

[86] *Id.*

state a claim upon which relief may be granted because he has not alleged facts that could plausibly support a finding that Defendants have attached, levied, or seized his VA benefits in violation of § 5301(a)(1). Plaintiff's Complaint states that he has been forbidden from sending and using his benefits outside EDCF.[87] Although Plaintiff contends that his inability to direct his funds as he sees fit amounts to an attachment, levy, or seizure, the benefits in his account are being held for his exclusive benefit and KDOC policy set forth in IMPP 04-106A specifically prohibits those benefits from being used to pay fines, fees, or other payments.[88] Unlike in *Nelson* and *Higgins*, Defendants here have taken no specific action against the VA benefits in Plaintiff's inmate account. Accordingly, Plaintiff has failed to allege a violation of his federal statutory right to be free from the attachment, levy, or seizure of his VA benefits. Having found that Plaintiff has not alleged the violation of a federal statutory right, the Court need not reach the second prong of the qualified immunity analysis, which examines whether the right in question was clearly established at the time of the challenged conduct. Defendants' motion to dismiss is granted as to Plaintiff's official and individual-capacity claims arising under § 5301(a)(1).

### 2. Due Process

Liberally construed, Plaintiff's Complaint appears to allege that Defendants have violated his procedural due process rights under the Fourteenth Amendment, and/or his substantive due process rights, by failing to timely notify him of his receipt of VA benefits, depositing those benefits in his inmate trust account without his consent, and enforcing KDOC policies that prohibit Plaintiff from sending more than $40 per pay period outside EDCF.[89] The Fourteenth

---

[87] Doc. 3 at 4.

[88] Doc. 11-5 at 3.

[89] Doc. 1 at 4–6; Doc. 3-1 at 11–12.

Amendment applies to the States and guarantees procedural due process only for deprivation of "life, liberty, or property."[90] When evaluating a procedural due process claim, the court considers (1) whether the individual possesses a protected interest to which due process protection is applicable; and (2) whether the individual has been afforded the appropriate level of process.[91] In the prison context,

> [W]hether a liberty or property interest is at stake should be based on the test described [by the Supreme Court] in *Sandin v. Connor*, 515 U.S. 472 (1995). Under that test, a deprivation of a property <u>or</u> liberty interest must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[92]

Tenth Circuit case law is not definitive on what sources of inmate income, if any, may give rise to a protected property interest and under what circumstances. Following the Supreme Court's ruling in *Sandin*, the Tenth Circuit has held that a prisoner lacked a protected property interest in a money order sent to him by another prisoner's mother.[93] The Tenth Circuit reached that conclusion because the plaintiff "presented no evidence or authority for the proposition that [being deprived of a contraband money order] was an 'atypical and significant hardship' that subjected him to conditions much different from those ordinarily experienced by inmates serving their sentences in the customary fashion."[94] In other cases, the Tenth Circuit has assumed without deciding that inmates do have a property interest in the funds in their inmate accounts.[95]

---

[90] U.S. Const. amend. XIV, § 1.

[91] *Reedy v. Werholtz*, No. 10-3155-JWL, 2011 WL 9174 at *3 (D. Kan. Jan. 3, 2011) (citing *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006).

[92] *Leek v. Heimgartner*, No. 15-3017-SAC-DJW, 2016 WL 9441463 at *2 (D. Kan. June 21, 2016) (underling in original) (citing *Sandin v. Connor*, 515 U.S. 472, 484 (1995)) (other internal citations omitted).

[93] *Steffey v. Orman*, 461 F.3d 1218, 1221–23 (10th Cir. 2006).

[94] *Id*. at 1222 (citing *Sandin*, 515 U.S. at 484).

[95] *See Clark v. Oakley*, 560 F. App'x 804, 808 n.1 (10th Cir. 2014) (noting in dicta that inmates "may" have property interest in their prison accounts); *Burnett v. Leatherwood*, 557 F. App'x 739, 742-43 (10th Cir. 2014) (assuming a possible property interest in a minimal prison fine); *Whitmore v. Hill*, 456 F. App'x 726, 729 (10th Cir.

Thus, the existence of a protected property interest in inmate trust accounts is an issue that has not been squarely decided in the Tenth Circuit.[96]  However, this ambiguity in the law matters little here, since Plaintiff's suit involves VA benefits deposited in his inmate trust account and it is well established that "[a] veteran has a constitutionally protected property interest in entitlement to VA disability benefits."[97]

Although the Court finds that prisoners have a protected property interest in VA benefits guaranteed to them under federal law, the Court also finds that a prisoner has no protected interest in the *current use* of those funds.  KDOC policy requires that "[when an offender possesses money at the time of admission or receives money thereafter, the money shall be placed in an individual trust account within the Department's Inmate Trust Funds."[98]  As set forth above, Plaintiff's VA benefits are being held in his inmate trust account for his exclusive benefit and are specifically protected from the imposition of fine, fees, or other levies pursuant to KDOC policies and procedures.[99]  The parties have not cited, nor has the Court found, Tenth Circuit case law addressing whether a prisoner has a protected interest in controlling the use of his or her funds during incarceration.  The Tenth Circuit has held, however, that there is no deprivation of due process where inmates are forced to *save* 10% of funds received from outside

---

2010) (same); *Sperry v. Werholtz*, 321 F. App'x 775, 779 (10th Cir. 2009) ("We assume, without deciding, that [plaintiff] had a protected property interest in the money he received from outside of KDOC."); *see also Larkin v. Werholtz*, No. 07-3325-SAC, 2008 WL 852126 at *3 (D. Kan. March 28, 2008) (assuming without deciding that an inmate has a property interest in funds from outside sources).

[96] *Leek v. Miller*, No. 16-3225, 2017 WL 2459812 at *5 (10th Cir. June 7, 2017) (stating that "the law in this circuit is not clearly established whether a prisoner has a protected property interest in his prison accounts."); *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010) (in context of qualified immunity analysis, finding that prisoner had no "clearly established" protected property right in his prison trust account); *Tijerina v. Patterson*, 507 F. App'x 807, 810 (10th Cir. 2013) ("We have not determined whether an inmate has a property interest in funds held in a prison account.") (citing *Clark*, 625 F.3d at 691-92).

[97] *Morris v. Shinseki*, 26 Vet. App. 494, 508 (2014) (citing *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009); *see also Cushman*, 576 F.3d at 1298 ("We conclude that . . . entitlement to benefits is a property interest protected by the Due Process Clause . . . .").

[98] Doc. 10-5 at 2.

[99] Doc. 11-5 at 3.

sources.[100] Further, the similar case of *Bostic v. Dohrman*,[101] cited by Defendants, is instructive. In that case, as here, a prisoner brought suit under § 1983 and §5301(a)(1).[102] The *Bostic* plaintiff alleged that prison officials violated his statutory and constitutional rights through prison policies that (1) prohibited him from spending more than $30 per month at the prison commissary while he was indebted to the prison due to disciplinary fines, and (2) required that his VA benefits be deposited into a reserve account that was not subject to the imposition of prison or other fines.[103] The court held that:

> Although Bostic has a property interest in his VA benefits and other funds in his inmate trust account, there is no protected interest in the current use of those funds. Accordingly, Bostic has failed to show he was deprived of a protected interest. The placement of Bostic's VA benefits in a reserve account does not deprive him of those funds or limit his access to them. On the contrary, the reserve account protects the VA benefits from the claims of creditors and prevents deprivation by garnishment, attachment, or any other collection action. There is no deprivation that implicates the due process clause. [104]

The *Bostic* court further held that "[t]he restrictions ODOC placed on Bostic's spending privileges do not deprive him of a protected property interest. It is a temporary limitation on Bostic's current use of funds posted to his inmate trust account. An inmate has no protected interest in the current use of funds."[105] The Court finds that as in *Bostic*, Plaintiff here has no

---

[100] *See Sperry v. Werholtz*, 321 F. App'x 775, 779 (10th Cir. 2009); *see also Larkin v. Werholtz*, No. 07-3325-SAC, 2008 WL 852126 at *4 (D. Kan. March 28, 2008) (finding no violation of due process where plaintiff was forced to save 10% of money acquired from outside sources because "the money still belongs to the plaintiff, and will benefit either him or his estate. He has thus not been permanently deprived of the value of the money . . . but is merely denied the use of a small percentage of the money given to him during his period of incarceration.")

[101] *Bostic v. Dohrman*, No. CV-10-315-JO, 2013 WL 786126 (D. Or. Feb. 28, 2013).

[102] *Id*. at *1.

[103] *Id*.

[104] *Id*. at *2 (internal citations omitted) (citing *Ward v. Ryan*, 623 F.3d 807, 813 (9th Cir. 2010)).

[105] *Id*.

protected interest in *controlling* the use of his VA benefits while he is incarcerated at EDCF and, therefore, fails to state a claim for a violation of his procedural due process rights.

Plaintiff also fails to state a substantive due process claim. "A prison regulation does not violate a prisoner's substantive due process rights unless the prisoner proves that the regulation lacks a 'rational relation to legitimate penological interests.'"[106] When an individual is incarcerated, such confinement necessarily requires "the withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."[107] In this case, KDOC policies and procedures limiting the amount of money that inmates can send outside the prison serve legitimate penological interests, such as promoting the safety of those within prison facilities, preventing inmates from conducting illicit business outside the prison, and conserving an inmate's resources to assist with reentry into the community at the conclusion of his or her sentence.[108] Such "[l]imitations on inmates' use and receipt of money while in prison are ordinary incidents of prison life and are well within the bounds of what a sentenced inmate may reasonably be expected to encounter as a result of his or her conviction."[109] Because KDOC policies prohibiting Plaintiff from sending money outside EDCF in excess of $40 per pay period are rationally related to legitimate penological interests, Plaintiff has failed to state a substantive due process claim.

---

[106] *Reedy v. Werholtz*, No. 10-3155-JWL, 2011 WL 9174 at *2 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

[107] *Sandin v. Connor*, 515 U.S. 472, 485 (1995) (quoting *Jones v. N.C. Prisoners' Labor Union*, Inc., 433 U.S. 119, 125 (1993)).

[108] *See Steffey v. Orman*, 461 F.3d 1218, 1222 (10th Cir. 2006) (finding legitimate penological interest behind Oklahoma prison policy that prevented inmate from receiving money from another inmate's family member, where interest was "preventing inmates from using their family members to pay off their drug, gambling or other debts to fellow inmates, or from extorting money from an inmate's family with threats of harm."); *Ellibee v. Simmons*, 85 P.2d 216, 219–220 (Kan. Ct. App. 2004) (finding KDOC had legitimate rationale for enforcing mandatory 10% savings policy where purpose of such policy was to make money available to inmate upon his release and to restrict the "free flow of currency within the prison system.").

[109] *See Larkin v. Werholtz*, No. 07-3325-SAC, 2008 WL 852126 at *4 (D. Kan. March 28, 2008).

Having found that Plaintiff has failed to allege facts that would plausibly give rise to a cause of action for the deprivation of his due process rights, the Court once again need not reach the second prong of the qualified immunity analysis, which examines whether the right in question was clearly established at the time of the challenged conduct. Plaintiff's due process claims against Defendants, in both their official and individual capacities, are dismissed.

### 3. Takings Clause

Based on a liberal construction of Plaintiff's Complaint, it appears that Plaintiff is alleging that he has been deprived of his property in violation of the Fifth Amendment Takings Clause due to restrictions on his ability to use his VA benefits as he sees fit and KDOC's failure to pay interest on his inmate trust account.[110] The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation,"[111] and is made applicable to the States through the Fourteenth Amendment.[112] Like due process claims, takings claims require a "legally cognizable property interest."[113] Further, "'[a] party challenging governmental action as an unconstitutional taking bears a substantial burden' and we evaluate a regulation's constitutionality by examining 'the justice and fairness of the governmental action.'"[114]

To begin, with regard to the restrictions placed upon Plaintiff's spending of VA benefits outside EDCF while he is incarcerated, the Court finds that Plaintiff has not alleged a taking within the meaning of the Fifth Amendment because those benefits are being held for his

---

[110] Doc. 1 at 6; Doc. 3-1 at 11.

[111] U.S. Const. amend. V.

[112] *Ellibee v. Simmons*, 201 F. App'x 612, 616 (10th Cir. 2006) (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005)).

[113] *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006).

[114] *Taylor v. Sebelius*, 189 F. App'x 752, 758 (10th Cir. 2006) (citing *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 718 (10th Cir.2004)).

exclusive benefit and have not been and may not be appropriated by Defendants for any reason under federal law and KDOC policies and procedures. Under IMPP 04-106A, VA benefits are expressly shielded from the collection of "fines, fees or payments,"[115] and Plaintiff is free to make purchases from his VA benefits inside the prison at his discretion. Defendants' refusal to permit Plaintiff to send more than $40 per pay period *outside* EDCF per KDOC policies and procedures does not amount to an unjust taking under the Fifth Amendment because nothing is being taken.

The issue of interest earned on Plaintiff's inmate trust account, on the other hand, requires further analysis. Defendants argue that Plaintiff has no protectable property interest in the interest earned on his inmate trust account or, if Plaintiff does have such an interest, that it is merely "a limited property right that does not trigger the applicability of the Fifth Amendment given the penological context it has been afforded in."[116] Defendants acknowledge a circuit split on this issue, pointing out that the First, Fourth, and Eleventh Circuits have found that prisoners do not have a protectable property interest in the interest generated by their inmate accounts, while the Ninth Circuit has held that a state's failure to pay interest on inmate accounts is an unconstitutional taking within the meaning of the Fifth Amendment.[117]

In this case, the Court's analysis is simplified by the fact that Kansas statutory law on state institutions and agencies expressly provides that:

> The chief administrative officer of each institution shall designate an officer or employee of the institution to be in charge of the trust funds to which this act applies. The person so designated shall have custody and charge of all moneys **belonging to and held by the institution for the use and benefit of each individual who is a student, client, member, patient or inmate** of the institution. The person so designated shall

---

[115] Doc. 11-5 at 3.

[116] Doc. 15 at 17.

[117] Doc. 15 at 15–18.

deposit such moneys **in one or more interest-bearing accounts** in a bank, savings and loan association or federally chartered savings bank which bank, association or savings bank is insured by the federal government or an agency thereof, or invested in a credit union which is insured with an insurer or guarantee corporation as required under K.S.A. 17-2246, and amendments thereto and is designated by the pooled money investment board. Such moneys shall constitute a patient trust fund, **inmate trust fund** or other trust fund as the case may be.[118]

K.S.A. § 76-175(b) further provides that "[i]nterest earned on moneys invested under this section shall be regularly prorated according to procedures approved by the director of accounts and reports and **credited to the individual patient, inmate or other account on the basis of the amount of money each patient, inmate or other person has in the trust fund**."[119]

Additionally, the applicable KDOC regulation, IMPP 04-103D, provides that "[immediately upon the close of the monthly interest earning period, **interest earned on the Inmate Trust Fund less the applicable bank service fee shall be credited to each active account** . . . ."[120]

To date, Tenth Circuit case law has not addressed whether prisoners in the State of Kansas have a property interest in the interest earned on their inmate accounts, and the First, Fourth, and Eleventh Circuit cases cited by Defendants are distinguishable because they do not involve express state statutory language requiring that interest earned be credited to individual prisoners "on the basis of the amount of money each . . . inmate . . . has in the trust fund."[121]  Because

---

[118] K.S.A. § 76-173 (emphasis added).

[119] K.S.A. § 76-175(b) (emphasis added).

[120] Doc. 10-5 at 4.

[121] K.S.A. § 76-175(b).  The First, Fourth, and Eleventh Circuit cases upon which Defendants rely do not involve state statutes mandating the payment of interest to individual inmates on pro rata basis.  *See Young v. Wall*, 642 F.3d 49, 54 (1st Cir. 2011) ("The statute is silent . . . on the subject of interest."); *Washlefske v. Winston*, 234 F.3d 179, 185 (4th Cir. 2000) (finding no property right to interest where governing state statute "vests the right to control such interest or income in prison authorities" rather than prisoner); *Givens v. Ala. Dept. of Corr.*, 381 F.3d 1064, 1069–70 (11th Cir. 2004) (finding no property interest where "Alabama statutes are silent as to what is to become of any interest earned" and noting that "[a]lthough common law does not vest [plaintiff] with a property interest in the interest on his account, Alabama could still have created property interest by enacting a statute, adopting a regulation or implementing a policy.").  Defendants also refer to *Petrick v. Fields*, 103 F.3d 145 (10th Cir. 1996), an unpublished Tenth Circuit decision finding no property right in interest earned on an inmate's account.  This case is likewise distinguishable because the court looked to Oklahoma law to define plaintiff's

Kansas statutory law entitles Plaintiff to earn interest on his inmate trust account, this Court—unlike courts in other circuits finding no protectable property interest—need not examine the extent to which inmates enjoy common-law property rights.[122]  The Court finds that Plaintiff has a protectable property interest in the interest generated from his inmate trust account.

Defendants argue that even if Plaintiff has a protectable property interest, his right to the interest earned on his account is "contingent upon [interest] amounting to no more than the cost of the administration fees," and that there is no taking where the cost of administering trust accounts for the prison population at large exceeds the aggregate amount of interest earned by all prisoners.[123]  Defendants contend that Plaintiff's Takings Clause argument must fail because "the plaintiff is challenging a policy that does not withhold interest and pool it for the use of anyone or any entity.  The only reason interest is withheld is because the fees in administering the trust fund exceed the interest paid."[124]  The Court disagrees with Defendants' position that the use of Plaintiff's earned interest to pay bank maintenance fees for the prison population as a whole does not amount to a "public use" within the meaning of the Fifth Amendment.  Although Defendants contend that this case does not "implicate a rule that withholds interest to serve a common purpose,"[125] Defendants do not adequately explain how the use of one inmate's interest to pay bank maintenance fees for other inmates—which the State would otherwise have to pay—does not constitute a public use.  In a case similar to this one, the Ninth Circuit found a taking for a

---

interest, and "[t]he Oklahoma statutes governing the administration of an inmate's draw and mandatory savings accounts clearly do not require interest earned on those accounts to be credited to the inmate."  *Id*. at *2.

[122] *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.")

[123] Doc. 15 at 17–18.

[124] *Id*. at 18 (citing Doc. 3-1 at 14).

[125] *Id*.

public use where a provision of the California Penal Code provided that interest earned on inmate accounts be allocated to an inmate welfare fund.[126]  The Ninth Circuit explained that where interest earned on inmate accounts is being used by the State "for the benefit of the entire prison population,"[127] that use is a public use and the State perpetuates a taking within the meaning of the Takings Clause.  In this case, KDOC's use of Plaintiff's earned interest to help defray the cost of maintaining accounts for other prisoners likewise amounts to a public use.

At one time, Plaintiff here had more than $8,000 in his inmate trust account, an amount that likely exceeds the balance in many other inmate accounts by a significant margin.[128]  Plaintiff argues that to determine whether Defendants' use of his earned interest to pay bank fees for the larger prison population "constitutes a taking without just compensation, an individualize[d] assessment of net interest earned on the individual plaintiff's inmate trust account is required."[129]  Plaintiff states that "Defendants submit no evidence demonstrating what the interest earned on Plaintiff's inmate trust account was."[130]  The Court agrees that such an accounting is necessary to determine whether Plaintiff has suffered a taking without just compensation under the Fifth Amendment.  As the Ninth Circuit has stated:

> For takings purposes . . . the relevant inquiry is not the overall effect on the fund administration but whether any of the individual inmates themselves have been deprived of their accrued interest. The government is not absolved of its constitutional duty to pay "just compensation" to an individual whose property has been

---

[126] *Schneider v. Cal. Dept. of Corr.*, 345 F.3d 716, 720 (9th Cir. 2003); *see also McIntyre v. Bayer*, 339 F.3d 1097, 1101 (9th Cir. 2003) ("[I]t is clear that by transferring the interest earned on the pooled resources of [the] prisoner's property fund to the offenders' store fund to be expended 'for the welfare and benefit of all offenders,' [the Nevada statute] does effect a transfer of the interest earned from the prisoners to the state.").

[127] *Schneider*, 345 F.3d at 720 (citing *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 217 (2003) (holding that "a law requiring that the interest on . . . funds be transferred to a different owner for a legitimate public use could be a *per se* taking requiring the payment of 'just compensation.'")).

[128] Doc. 13-1 at 4.

[129] Doc. 18 at 11.

[130] *Id.*

taken for public use merely because the same government has benevolently conferred value on another affected property owner. Indeed, even if the total costs of operating a pooled fund outweigh the total interest generated, individual account holders in that fund are not precluded, on a proper showing, from enjoyment of their constitutionally protected property rights.[131]

The Court finds that in this case, "there remains the fundamental question for takings purpose of whether [this] *individual* inmate was deprived of any net interest."[132]

Having addressed the first prong of the qualified immunity analysis with respect to Plaintiff's Fifth Amendment Takings Clause argument, and having found that an accounting of Plaintiff's interest earned compared with his share of the bank maintenance fee would be required to determine whether Defendants have violated the Takings Clause, the Court now turns to the second prong of the qualified immunity test, which examines whether the right the official violated was "clearly established" at the time of the challenged conduct. Given the lack of Tenth Circuit case law and the circuit split, the Court finds that Plaintiff's property interest in interest generated by his inmate trust account was not clearly established at the time of the challenged conduct.[133] Accordingly, Defendants are entitled to qualified immunity with respect to

---

[131] *Schneider*, 345 F.3d at 721.

[132] *Id.* at 720 (emphasis in original); *see also McIntyre v. Bayer*, 339 F.3d 1097, 1101 (9th Cir. 2003) ("What is not clear on the record before us . . . is whether the interest earned by McIntyre's principal is exceeded by his share of the costs of administering the prisoners' personal property fund. This information, however, is precisely what we need to know in order to determine whether the director has taken McIntyre's interest without just compensation."); *Roop v. Ryan*, No. CV-12-0270-PHX-RCB (JFM), 2013 WL 3155402 at *3 (D. Ariz. June 20, 2013) (recognizing the holdings of *McIntyre* and *Schneider* and finding that "[t]o determine whether such action constitutes a taking without just compensation, an individualized assessment of net interest and just compensation is required; the court must examine whether the interest earned on the individual plaintiff's inmate trust account is exceeded by his share of the costs of administering the personal inmate trust account.") (citing *Schneider*, 345 F.3d at 720–21).

[133] *See Leek v. Heimgartner*, No. 15-3107-SAC-DJW, 2016 WL 9441463 at *2 (D. Kan. June 21, 2016) (stating that "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate.'") (citing *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

Plaintiff's Fifth Amendment claim against them in their individual capacities.[134]  However, qualified immunity does not resolve Plaintiff's official-capacity claim against Defendant Norwood for injunctive relief pertaining to the payment of interest earned on Plaintiff's inmate trust account, and that claim remains.

### C.        Supremacy Clause

Although not alleged in his Complaint, Plaintiff raises a Supremacy Clause argument in his Opposition to Motion to Dismiss.[135]  He contends that "the Kansas Department of Corrections General Orders (GO) section number 02-103, and Kansas Department of Corrections Internal Management Policy and Procedure (IMPP) section 04-103D and 11-101 is in conflict, and void under the Supremacy Clause, if it stands as an obstacle to the accomplishment and execution of the purpose and objective of Congress"[136] in enacting § 1983.  Plaintiff does not specify precisely which provisions of these policies violate the Supremacy Clause and in what way, but the Court liberally construes his allegations to concern the $40 per pay period restriction on funds sent outside EDCF.

The Supremacy Clause reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.[137]

---

[134] To the extent that Plaintiff is also asserting a due process argument with respect to the deprivation of interest earned on his inmate trust account, the Court notes that the outcome would be the same under the qualified immunity analysis because, at the time of the challenged conduct, there was no binding precedent establishing that Defendants' conduct violated a protected property right.

[135] Doc. 18.

[136] *Id*. at 10.

[137] U.S. Const. Art. VI, cl. 2.

Thus, the Supremacy Clause requires courts to "not give effect to state laws that conflict with federal laws."[138]  The Supremacy Clause does not create any private federal rights, nor does it create a private right of action.[139]  However, when an individual can assert a federal substantive right that would be infringed upon by state regulation, "the court may issue an injunction upon finding the state regulatory actions preempted."[140]  A state law that conflicts with a federal statute is void under the Supremacy Clause if "it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[141]  Since the Court assumes here that the Tenth Circuit would recognize § 1983 claims for alleged violations of § 5301(a)(1), the Court will analyze whether the KDOC regulations at issue infringe upon Plaintiff's right to his VA benefits under that statute.

Plaintiff appears to primarily complain of the spending restriction set forth in IMPP 11-101, which establishes a $40 limit on outgoing funds with several exceptions.[142]  One of those exceptions states that "[u]pon recommendation of the unit team and approval of the warden or designee, offenders assigned to private industry (minimum wage) or those who receive government benefits may be authorized, on an individual basis, to send out funds in excess of $40.00 per pay period limit."[143]  IMPP 04-103D further provides that:

> An offender may be required to submit evidence that the entity identified to receive funds per the withdrawal request is a legitimate entity and that the funds will be utilized for the designated purpose.  This may include submitting evidence from

---

[138] *Armstrong v. Exceptional Child Ctr., Inc*., 135 S. Ct. 1378, 1383 (2015) (citing *Gibbons v. Ogden,* 9 Wheat. 1, 210, 6 L.Ed. 23 (1824)).

[139] *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 900 (10th Cir. 2017) (citing *Armstrong*, 135 S. Ct. at 1383).

[140] *Armstrong,* 135 S. Ct. at 1384 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).

[141] *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

[142] Doc. 10-6 at 9.

[143] Doc. 10-6 at 10.

the vendor, such as a sales tax registration certificate, to show that the vendor is properly conducting business.[144]

Thus, although Plaintiff alleges that KDOC's regulations prohibit him from sending more than $40 outside EDCF, this does not appear to be entirely accurate. Rather, Plaintiff's spending requests are subject to review by prison officials, who may require certain types of verifying documentation.

Regardless of whether IMPP 11-101 and 04-103D prohibit Plaintiff from sending money outside the prison in excess of $40 per pay period, the Court finds that KDOC's policies do not conflict with § 5301(a)(1) in violation of the Supremacy Clause because they do not impose an attachment, levy, or seizure of Plaintiff's VA benefits. In fact, Plaintiff's VA benefits are being held for his exclusive benefit and KDOC's policies specifically shield them from being used to satisfy any fines, fees, or other payments.[145] This case is distinguishable from the *Higgins* case, where the Third Circuit found that a New Jersey statute providing for the collection of a crime victims' assessment from inmate accounts was void to the extent that it allowed prison officials to deduct funds derived from VA benefits.[146] The *Higgins* court held that the New Jersey statute had "created a creditor-debtor relationship between a person convicted of the crime . . . and the [Victims of Crime Compensation Board] that is enforceable by a court order"[147] in violation of §5301(a)(1), which provides benefits that shall be "exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."[148] Here, EDCF has no creditor claim against

---

[144] Doc. 10-5 at 4.

[145] Doc. 11-5 at 3.

[146] *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002).

[147] *Id.* at 692.

[148] 38 U.S.C. § 5301(a)(1).

Plaintiff, and may not acquire or enforce any such claim against Plaintiff's VA benefits pursuant to its own policies. The Court finds no violation of the Supremacy Clause in this case.

## IV.     Conclusion

This Court lacks subject matter jurisdiction to hear Plaintiff's official-capacity claims against Defendants for monetary damages and retrospective declaratory relief, and those claims are therefore dismissed. Plaintiff's individual-capacity claims against Defendants for the violation of his federal statutory rights under 38 U.S.C. § 5301(a)(1) and his due process rights under the Fourteenth Amendment are also dismissed for failure to state a claim upon which relief may be granted. With regard to Plaintiff's Fifth Amendment Takings Clause claims, those claims are dismissed as to all Defendants in their individual capacities on the basis of qualified immunity. However, Defendants' motion to dismiss is denied as to Plaintiff's official-capacity claim against Defendant Norwood seeking injunctive relief from EDCF's failure to pay interest on Plaintiff's inmate trust account without an individual accounting of interest accrued versus bank fees owed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 14) is **granted** as to Plaintiff's official-capacity claims against Defendants Heimgartner and Donley, **granted** as to Plaintiff's individual-capacity claims against all Defendants, but **denied** as to Plaintiff's official-capacity claim against Defendant Norwood for injunctive relief from EDCF's policy of not paying interest earned on Plaintiff's inmate trust account.

**IT IS SO ORDERED.**

Dated: September 27, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE